## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| AETNA HEALTH INC., et al., | |
| *Plaintiffs*, | |
| v. | CASE NO.: 3:24-CV-01343-BJD-LLL |
| RADIOLOGY PARTNERS, INC. et al., | |
| *Defendants*. | |

## DEFENDANTS' MOTION TO STAY DISCOVERY, OR ALTERNATIVELY MOTION FOR PROTECTIVE ORDER, PENDING RESOLUTION OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY [ECF NO. 28] AND MOTION TO DISMISS [ECF NO. 27]

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants Mori, Bean, and Brooks, Inc. ("MBB") and Radiology Partners, Inc. ("RP") respectfully request that this Court enter an Order staying discovery in this matter, or issuing a protective order, until the Court rules on Defendants' Motion To Compel Arbitration and Motion To Stay ("Motion to Compel Arbitration") [ECF No. 28], and Defendants' Motion To Dismiss ("Motion to Dismiss") [ECF No. 27].

## I.    INTRODUCTION

In this lawsuit, Plaintiffs Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Insurance Company (collectively "Aetna"), allege MBB billed for services by other Florida RP-affiliated radiology practices since affiliating with RP in 2018. Complaint [ECF No. 1] at ¶¶ 48, 60.

The Complaint admits that MBB was an in-network provider with Aetna until July 2022 pursuant to a written contract (the "Contract"). Compl. ¶ 118. Aetna's claims relate to both the contracted period ("the Contracted Period") during which the Contract was effective and a later period when the parties became subject to the federal No Surprises Act ("NSA"), 42 U.S.C. §§ 300gg-111-12 (the "NSA Period").

Defendants deny that Aetna's claims have any merit, so they filed their Motion to Dismiss. They also filed a Motion to Compel Arbitration because all of Aetna's claims include allegations that are inextricably tied to the Contract between the parties. That Contract contains a broad arbitration provision that **requires** the arbitration of claims "arising out of or relating to" the Contract:

> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof . . . **shall be** settled by binding arbitration administered by the [AAA] . . .

*See* Declaration of Malea Reising in Support of Defendants' Motion to Compel Arbitration ("Reising Decl.") [ECF No. 30], Ex A., ¶10.2.2) (emphasis added).

Aetna <u>knows</u> that its claims are subject to arbitration. As discussed in the Motion to Compel Arbitration, Aetna participated in an arbitration in Texas involving another RP-affiliated medical group (like MBB) where it insisted that RP was subject to arbitration when Aetna asserted similar tort counterclaims against RP to those asserted here (which were ultimately rejected). Now, rather than initiate arbitration, Aetna filed this lawsuit with claims based on both the Contracted Period

and the NSA Period in a transparent attempt to use its publicly filed Complaint as a publicity tool to punish Defendants for daring to demand fair reimbursement.

Apparently, that was not enough. Since Defendants advised Aetna of their Motion to Compel Arbitration, Aetna has doubled down and attempted to exploit its evasion of the arbitration requirement by serving written discovery requests. This is particularly harmful to Defendants in two ways. First, Defendants could waive their right to arbitrate by actively participating in this lawsuit and taking actions inconsistent with invoking the right to arbitration, so Defendants are completely constrained with regards to engaging in discovery. Second, Aetna agreed to more limited discovery than what is allowed in federal court for disputes like this, which the parties agreed to arbitrate, by incorporating the AAA Commercial Arbitration Rules and specifying that there shall be no depositions for discovery purposes in the Contract.

The Court should stay discovery during the pendency of Defendants' Motion to Compel Arbitration and Motion to Dismiss because: (1) the Contract plainly and indisputably requires the parties to engage in binding arbitration governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, for Aetna's Contracted Period claims; (2) the FAA mandates the Court stay this action pending arbitration; (3) Defendants cannot litigate the Contracted Period claims, including engaging in discovery, without waiving their right to arbitration; and (4) Defendants' Motion to

Dismiss is case dispositive; requiring discovery to proceed now would impose substantial and unnecessary costs on Defendants and the Court.

## II.    **BACKGROUND**

This case was filed on December 23, 2024 [ECF No. 1]. Pursuant to Fed. R. Civ. P. 26(d)(1), discovery could not occur before the Rule 26(f) conference. That conference began on February 14, 2025, and continued through February 24, when the Uniform Case Management Report was filed [ECF No. 26].

In the meantime, on February 19, 2025, undersigned counsel reached out to Aetna's counsel to confer on Defendants' Motion to Compel Arbitration and Motion to Dismiss. That conference occurred on February 20, 2025; Aetna knew that Defendants planned to seek to compel arbitration of the Contracted Period claims.

The very next day, on February 21, 2025, just seven days after the parties' initial Rule 26(f) conference — and a week before Defendants' response to the Complaint was due — Aetna served its First Set of Interrogatories to Defendant Radiology Partners, Inc. (attached as Ex. A), and its First Set of Requests for Production to Defendant Radiology Partners, Inc. (attached as Ex. B). Responses to these initial discovery requests are due on March 24, 2025. On February 28, 2025, just three days after Defendants' Motion to Compel Arbitration was filed, Aetna served its Second Set of Requests for Production to Defendant Radiology Partners,

Inc. containing four additional requests (attached as Ex. C). Responses to the Second Set of Requests are due March 31, 2025.

When Aetna served its discovery requests it <u>knew</u> that Defendants would be (1) seeking to compel arbitration and seeking a stay of this action pending arbitration of all claims; and (2) moving to dismiss the Complaint. Regardless — and consistent with its attempts to avoid arbitration of its contractually-arbitrable claims — Aetna proceeded with serving discovery that forces Defendants to seek this stay so that they do not waive the right to arbitration by actively participating in the lawsuit.

## III.    **AETNA'S DISCOVERY REQUESTS**

Aetna's discovery requests seek documents and information relating to Aetna's claims that encompass <u>both</u> the Contracted Period (which are subject to arbitration) and the NSA Period from **January 1, 2012, through the present day**. *See* Aetna's First Set of Interrogatories at p. 2, Ex. A, Aetna's First Set of Requests for Production, Ex. B, at p. 6. MBB was in-network pursuant to the Contract (which requires arbitration) for more than a decade of that time period.

The below are examples of Aetna's discovery requests seeking documents and information during the Contracted Period (that is subject to arbitration):

- <u>Interrogatory No. 8</u>: Describe each notice that RP, MBB, and/or someone acting on behalf of MBB provided to Aetna under the Network Agreement, including but not limited to:
  a.    A description of the notice that was provided;
  b.    The date the notice was sent by MBB;

c.  The provision of the Agreement that the notice was provided pursuant to; and,

d.  The effect that You contend the notice had or has under the Network Agreement.

- This interrogatory seeks information relating to the Contract, notices given thereunder, the related Contract provisions, the effect under the Contract of those provisions; all within the Contracted Period.

- **Request No. 18**: All Documents and Communications related to enrolling Rendering Providers under MBB's TIN. This request includes but is not limited to Documents and Communications regarding decisions and directives to enroll providers from the Affiliated Medical Groups under MBB's TIN; discussions or explanations as to the motivations for enrolling providers from the Affiliated Medical Groups under MBB's TIN; discussions or directives regarding "go-live" dates for enrolling and/or billing; and decisions, discussions, and directives regarding providing notice to Payors related to enrolling Rendering Providers under MBB's TIN.

- "Enrollment" of a provider under a medical group's TIN only occurs when a medical group is in-network with a health plan. This request seeks documents related to actions MBB took pursuant to the Contract during the Contracted Period.

- **Request No. 3**: All Documents and Communications related to responding to Aetna's inquiries and communications regarding an increase in the number of claims submitted by MBB to Aetna.

- Aetna concedes that these inquiries and communications occurred while MBB was in-network under the Contract. Compl. ¶¶ 113-118.

- **Request No. 14**: All Documents that MBB and the Affiliated Medical Groups in Florida provided to Radiology Partners prior to being acquired by Radiology Partners.

- Aetna alleges that RP acquired MBB while MBB was still in-network with Aetna under the Contract. Compl. ¶¶ 48-49.

- Interrogatory No. 2: Identify each person involved in the selection of which TIN would be used to bill for services provided to Aetna members in Florida by Affiliated Medical Groups, including their respective title(s), role(s), and which entity they were employed by.

  o Aetna alleges that while MBB was in-network with Aetna, MBB added additional providers allegedly employed by other radiology practices, and that those additional providers continued to bill under MBB after Aetna terminated the Contract. Compl. ¶¶ 4-9.

## IV. THE COURT HAS BROAD DISCRETION TO MANAGE DISCOVERY, INCLUDING ISSUING A STAY OF DISCOVERY

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Indeed, "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citation omitted); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Johnson v. Board of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling.") (citations omitted). Factors a court may consider when determining whether to grant a stay include "prejudice to the non-moving party, whether the requested stay would simplify and clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court." *Mackiewicz v. Nationstar Mortgage, LLC*, Case No: 6:15-cv-465-Orl-18GJK, 2015 WL 11983233, at *1 (M.D. Fla. Nov. 10, 2015).

The court also has "broad inherent power to stay discovery until preliminary issues can be settled which may be dispositive of some important aspect of the case." *Mitchell v. Apollo Interactive Ins. Sols. LLC*, No. 3:24-CV-643-BJD-LLL, 2024 WL 5327443, at *1 (M.D. Fla. Dec. 16, 2024) (citations omitted). "In deciding whether to stay discovery, the Court must take a 'preliminary peak' [sic] at the motion to determine whether it appears meritorious and case dispositive." *Id.*, 2024 WL 5327443, at *1 (citing *Feldman v. Flood*, 176 F.R.D. 651, 652-53 (M.D. Fla. 1997)).

## A.    COURTS ROUTINELY STAY DISCOVERY PENDING A MOTION TO COMPEL ARBITRATION

"[C]ourts have routinely stayed discovery into the underlying merits of the case when a motion to compel arbitration has been filed in good faith." *Morat v. Cingular Wireless LLC*, No. 3:07-CV-1057-J-20JRK, 2008 WL 11336388, at *2 (M.D. Fla. Feb. 14, 2008); *Mitchell*, 2024 WL 5327443, at *2 (staying discovery pending resolution of a motion to compel arbitration because allowing discovery to proceed may require the expenditure of significant resources "as well as a determination that defendant has waived its right to arbitrate") (citations omitted); *Falcon v. Televisaunivision Digital, Inc*., No. 8:23-CV-2340-TPB-JSS, 2024 WL 639789, at *1 (M.D. Fla. Feb. 15, 2024) (same).

The Middle District has determined that, "[t]he discovery that is permissible until a determination is made as to whether this action will go to arbitration **must be related to the impact on the enforceability of the arbitration clause.**" *O.N. Equity*

*Sales Co. v. Merkel*, No. 2:07-CV-531-FtM-29DNF, 2008 WL 380573, at *1 (M.D. Fla. Feb. 11, 2008) (emphasis added) (citing *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1318 (11th Cir. 2005)). There can be no dispute here that there is a valid and enforceable arbitration clause.

Should the Court grant Defendants' pending Motion to Compel Arbitration, a stay of Plaintiff's arbitrable claims in this lawsuit, including all discovery related thereto, is mandatory under 9 U.S.C. § 3 while the arbitration, with its more limited discovery obligations and burdens proceeds.[1] As this court has recognized, "compelling discovery during the pendency of defendant's motion to compel [arbitration] would frustrate the purpose of arbitration—an inexpensive and expeditious resolution of claims." *Mitchell*, 2024 WL 5327443, at *2. Thus, a stay of discovery is appropriate to prevent waste of the parties and the Court's resources should arbitration be granted and a stay become mandatory.

---

[1] *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) (when a dispute is subject to arbitration, and a party has requested a stay, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("the FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding 'is referable to arbitration under an agreement in writing for such arbitration,'"); *Reinhart v. Asset Managing Grp., Inc*, No. 3:16-CV-439-J-39MCR, 2016 WL 11530541, at *3 (M.D. Fla. Nov. 21, 2016) ("[T]he FAA 'provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration,' i.e., 'any issue referable to arbitration,' not necessarily when all issues are referable to arbitration." (citations omitted)); *Witt v. D.R. Horton, Inc.*, No. 8:08-CV-2414-T-33EAJ, 2009 WL 54902, at *2 (M.D. Fla. Jan. 7, 2009) ("A district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute.").

If the Court denies the Motion to Compel Arbitration, Defendants have a statutory right to appeal that decision. 9 U.S.C. § 16(a)(1)(B) ("An appeal may be taken from an order denying a petition … to order arbitration to proceed"). And while any appeal of a denial of a motion to compel arbitration remains pending, the Court must stay discovery. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 744 (2023) (a district court is "require[d]" to "stay its proceedings while the interlocutory appeal on the question of arbitrability is ongoing," to preserve the "benefits of arbitration"). Further, the denial of a stay of discovery pending resolution of a motion to compel arbitration "effectively denie[s]" the pending motion to compel, justifying an immediate appeal that mandates a stay under the Supreme Court's *Coinbase* decision. *See Sarah Car Care, Inc. v. LogistiCare Sols., LLC*, 2023 WL 5378845, at *2 (3d Cir. Aug. 22, 2023). Judge Honeywell has similarly held that Coinbase's reasoning—that a stay of district court proceedings is necessary to protect the benefits of arbitration—supports a stay pending the resolution of a motion to compel arbitration. *See Found. Church Inc v. Indep. Specialty Ins. Co.*, 2024 WL 555863, at *1 (M.D. Fla. Jan. 4, 2024).

In other words, whether the Motion to Compel Arbitration is granted, or denied and appealed, discovery will be stayed. Permitting discovery now would be an inefficient waste of resources that would jeopardize the parties' right to arbitrate.

## B.    COURTS ALSO STAY DISCOVERY WHEN A DISPOSITIVE MOTION IS PENDING

District courts have broad discretion to stay discovery upon a showing of "good cause and reasonableness." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (quotations omitted); *see also Moore v. Potter*, 141 F. App'x 803, 807 (11th Cir. 2005). "The Eleventh Circuit has held that facial challenges to the legal sufficiency of a complaint" often meet the good cause and reasonableness standard, and "should be resolved before discovery begins." *NCC Bus. Servs., Inc. v. Lemberg & Assocs., LLC*, No. 3:13-CV-795-J-99MMH-MCR, 2013 WL 5428737, at *1 (M.D. Fla. Sept. 26, 2013) (citing *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1292 (11th Cir. 2005)); *see also Moore*, 141 F. App'x at 807. "If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) (granting a motion to stay discovery where resolution of the motion could dispose of the entire case and noting that "any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible").

Courts in this district have stayed discovery where a motion to dismiss is potentially case dispositive. *See, e.g., Safeco Ins. Co. of Am. v. Amerisure Ins. Co.*, No. 8:14-cv-774-T-35MAP, 2014 WL 12621558, at *2 (M.D. Fla. Sept. 9, 2014) (granting a motion to stay discovery pending a ruling on defendant's motion to

dismiss because the motion "could be dispositive, in that it likely may result in the dismissal or stay of this case"); *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (granting motion to stay discovery pending ruling on motion to dismiss).

## V.    THE COURT SHOULD STAY DISCOVERY UNTIL AFTER ADJUDICATION OF DEFENDANTS' MOTIONS TO COMPEL ARBITRATION, STAY, AND DISMISS

Both Defendants' Motion to Compel Arbitration, and Defendants' Motion to Dismiss, provide good cause for the Court to exercise its discretion to stay discovery pending resolution of those motions.

### A.    DEFENDANTS' MOTION TO COMPEL ARBITRATION PROVIDES GOOD CAUSE TO STAY DISCOVERY

Defendants' Motion to Compel Arbitration provides good cause to stay discovery because (1) it is meritorious and case dispositive for Aetna's claims arising out of or relating to the Contracted Period; and (2) Defendants cannot engage in discovery without waiving their right to arbitration.

#### 1.    Defendants' Motion to Compel Arbitration Is Meritorious and Case Dispositive

A preliminary peek at Defendants' Motion to Compel Arbitration demonstrates that the motion is meritorious and case dispositive such as to warrant a stay of discovery. *See Mitchell*, 2024 WL 5327443, at *2.

a)     <u>**Aetna's Claims Are Subject to the Agreement's Arbitration Clause**</u>

Aetna's Complaint squarely alleges that the parties were contracted pursuant to the Contract until July 2022. The Contract contains a broad arbitration provision, which survives termination of the Contract. Reising Decl., Ex. A at § 10.2.2.

All the counts in Aetna's Complaint are based on allegations that, during the Contracted Period, MBB allegedly billed Aetna for services provided by non-MBB providers in violation of the Contract. Every count of the Complaint, whether alleged against MBB, RP, or both, also expressly incorporates paragraphs 1 through 118 and 188 through 209. These sections repeatedly rely on the Contract—which Aetna calls the "In-Network Agreement." *See* Compl. at ¶¶ 49, 54, 59, 76, 93, 105, 118. There can be no genuine dispute that Aetna's Contracted Period claims are subject to the broad arbitration clause contained within the Contract.

That Aetna has raised tort claims does not change the analysis, and Aetna cannot use those to avoid the arbitration clause in the Contract. Courts readily find that torts like those raised here are arbitrable under the broad arbitration provision contained in the Complaint. *See* Motion to Compel Arbitration, at 15-16 (citing *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 594 (Fla. 2013) (fraud arbitrable under broad arbitration provision because "(1) the fraud claim is inextricably intertwined with both the circumstances that surrounded the transaction from which the contract emanated and the contract itself; and (2) resolution of the

13

fraud claim requires the construction and consideration of duties arising under the contract[,]").[2] Resolving the tort allegations will require addressing the rights, obligations, terms, and conditions of the Contract. Aetna's allegations relating to the Contracted Period cannot be divorced from the Contract, and its attempt to force litigation as an end-run around the contracted-for dispute resolution process should be denied.

**b)** <u>**Aetna's Claims Against RP Are Also Subject to the Contract's Arbitration Clause**</u>

In addition to MBB, Aetna has filed its claims against RP—whom Aetna alleges acquired MBB—in an attempt to evade arbitration. But, even though it is a non-signatory to the Contract, RP is also entitled to arbitration pursuant to the Contract's Arbitration Clause, pursuant to the doctrines of (1) equitable estoppel; (2) agency; and/or (3) judicial estoppel. *See* Motion to Compel Arbitration at pp. 17-23. Courts apply these doctrines, and others, to prevent a contract signatory from evading arbitration by suing a non-signatory for claims that would otherwise be subject to arbitration.

---

[2] *See also Walsh Grp. v. Zion Jacksonville, LLC*, 379 So. 3d 571, 575 (Fla. 5th DCA 2024), *review denied sub nom. Zion Jacksonville, LLC v. Walsh Grp. d/b/a Archer W. Contractors*, LLC, No. SC2024-0329, 2024 WL 3335573 (Fla. July 9, 2024) (fraud and gross negligence were "inextricably intertwined" with contract, and thus subject to broad arbitration clause; pervasive theme was alleging defendant's conduct differed from what contract permitted); *Fla. Woman Care LLC v. Nguyen*, 329 So. 3d 146, 149 (Fla. 4th DCA 2021) (non-signatory manager of corporate signatory could compel arbitration of tortious interference with contractual relationship claim, which relied on the terms of the contract containing an arbitration clause).

Equitable estoppel supports RP compelling arbitration here. *See id.* at pp. 17-20. It allows non-signatories to enforce an arbitration provision against a signatory under **either** of two circumstances: (1) when the contract signatory relies on the contract for his or her allegations; *see Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003); or (2) when the contract signatory alleged concerted misconduct by a non-signatory and another contract signatory. *See Bailey v. ERG Enter.*, 705 F.3d 1311, 1321 (11th Cir. 2013); *Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633-34 (Fla. 4th DCA 2013).

Both circumstances apply here. Count One of the Complaint alleges tortious interference by RP with the Contract and will require Aetna to prove that MBB breached the Contract. *See Gerber v. Keyes Co.*, 443 So. 2d 199, 200-01 (Fla. 3d DCA 1983) (holding that no cause of action for tortious interference existed where the contract was never breached). But equitable estoppel prevents Aetna from both relying on the Contract for its claims and rejecting the Contract's requirements, like the Arbitration Clause. Similarly, equitable estoppel prevents Aetna from avoiding arbitration when it pleads in the Complaint that a contract signatory (MBB) and non-signatory (RP) are co-conspirators to submit bills for radiology services supposedly rendered by other RP-affiliated groups. *See*, *e.g.*, Compl. ¶¶ 4, 59.

Agency also supports RP compelling arbitration here. Plaintiffs like Aetna cannot avoid arbitration by suing an agent of a contracting party for alleged actions

15

the agent took on the principal's behalf. *Tenet Healthcare Corp. v. Maharaj*, 787 So. 2d 241, 243 (Fla. 4th DCA 2001) (non-signatory agents may compel arbitration). Aetna alleges that RP acts on behalf of MBB to submit bills for MBB to receive reimbursement, acts "on behalf" of MBB in initiating NSA disputes, and "could and did exercise complete control over MBB." *See* Compl. ¶¶ 50-52, 55, 133-34, 137. Aetna alleges a type of agency relationship. *See Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1355 (S.D. Fla. 2011) ("In fact the very definition of an agent is '[o]ne who is authorized to act for or in place of another; a representative.'" (citing BLACK'S LAW DICTIONARY (9th ed. 2009)). Furthermore, Defendants have submitted a declaration that RP's subsidiary is the "sole and exclusive **agent** for the management of the day-to-day business" of MBB pursuant to a management services agreement with MBB, and that RP is also an agent of MBB. *See* Motion to Compel Arbitration at pp. 21-22, Reising Decl. ¶ 6, 7a.

Finally, judicial estoppel also supports RP compelling arbitration here because Aetna successfully argued RP was subject to arbitration in Texas on arbitration counterclaims that contained torts parallel to those Aetna asserts here. *See* Motion to Compel Arbitration at pp 22-23. Judicial estoppel prevents Aetna from taking an inconsistent position here, when it was successful in arguing that in a separate case, simply because it is convenient.

### c)    **Aetna's Non-Arbitrable Claims Are Interwoven With the Arbitrable Claims**

Even further, any non-arbitrable parts of Aetna's claims (relating to the NSA Period) are so interwoven with the arbitrable claims (relating to the Contracted Period) that staying discovery entirely until the resolution of the arbitration will almost certainly save limited judicial resources by appropriately permitting these overlapping issues of law and fact be addressed first in the arbitration.

The arbitration outcome for the Contracted Period easily could have a preclusive effect on Aetna's allegations for the NSA Period, which merits a stay of the action entirely and presently of discovery related thereto. *See* Motion to Compel Arbitration at 24. For both time periods, MBB and RP will present much of the same evidence that services MBB billed at hospitals it staffs are MBB's services; and, no matter the time period, Aetna will present the same contrary arguments. If and when MBB and RP defeat Aetna's tort claims for the Contracted Period, Aetna's tort claims for the subsequent NSA Period based on the exact same factual allegations will be precluded; otherwise, the possibility of inconsistent results would vitiate the contractual requirement to arbitrate. *See, e.g. Variable Annuity Life Ins. Co. v. Laferrera*, 680 F. App'x 880, 884-885 (11th Cir. 2017) (finding that the district court abused its discretion in refusing to stay non-arbitrable claims that were based on "the exact same factual allegations" as the arbitrable claims because the defendant would have "to defend identical claims in two separate forums" which would "give rise to

the possibility of inconsistent results"); *Anderson v. Goodleap, LLC*, No. 8:23-cv-02366-WFJ-TGW, 2024 WL 1095934, at *1 (M.D. Fla. Mar. 13, 2024) (staying nonarbitrable claims because they "share[d] underlying facts and legal issues" with arbitrable claims and because "proceeding concurrently with litigation and arbitration could [have] result[ed] in inconsistent determinations").

The Court should stay discovery pending resolution of Defendants' Motion to Compel Arbitration, which also seeks a stay of this entire action pending arbitration. Aetna's attempt to engage in discovery prior to resolution of that motion is a transparent attempt to evade the contractually required arbitration and the attendant more limited discovery available. "An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules." *Suarez-Valdez v. Shearson Lehman/Am. Exp., Inc.*, 858 F.2d 648, 649 (11th Cir. 1988).

Indeed, as Magistrate Judge Lambert recently acknowledged, in an order finding good cause to stay discovery, "compelling discovery during the pendency of defendant's motion to compel [arbitration] would frustrate the purpose of arbitration—an inexpensive and expeditious resolution of claims." *Mitchell*, 2024 WL 5327443, at *2.

## 2. <u>Defendants Cannot Engage In Discovery Without Potentially Waiving Their Right to Arbitrate</u>

The pending Motion to Compel Arbitration also warrants a stay of discovery pending its resolution because Defendants cannot actively participate in discovery

here without potentially waiving their right to arbitration. *See Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1544 (11th Cir. 1990) (finding defendant's participation in discovery as though preparing for trial constituted a waiver of its right to arbitrate).

Prior to serving its discovery requests, Aetna <u>knew</u> Defendants would be filing their Motion to Compel Arbitration. *See* supra at 4-5. Not surprisingly, given Aetna's clear attempt to avoid arbitration, Aetna refused to proceed to the contractually required arbitration forum, served broad discovery that may not be available in arbitration (Exs. A and B); and then doubled-down by serving a second set of requests after receiving the Motion to Compel Arbitration and Motion to Dismiss. Ex. C. According to Aetna's own instructions, these broad and burdensome requests seek information going back as far as January 1, 2012. See Exs. A, B & C.[3]

Meanwhile, Aetna <u>knows</u> that Defendants must show, as part of their Motion to Compel Arbitration, that they did not waive their right to arbitration and thus cannot participate in discovery. "There are numerous ways in which a party can waive its contract rights. For example, 'prosecution or defense of a lawsuit on issues subject to arbitration'"—issues on the merits—may waive a right to arbitrate." *Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1137 (M.D. Fla. 2023) (citing *Seville Condo. No. 1, Inc. v. Clearwater Dev. Corp.*, 340 So. 2d 1243, 1245

---

[3] A typo in the instructions for the second set of document requests makes it unclear whether the same time period applies, or a slightly more limited period: "the First [sic] Set of Request for Production pertain to the period beginning on December 1, 2018 through the present day." Ex. C at p. 6, ¶ 15.

(Fla. 2d DCA 1976)). The Middle District has recognized that Florida courts have "explicitly required something more than removal—such as participation in discovery on the merits of the claims—to find waiver of a claimed right to arbitrate." *Id.*; *see also Mitchell*, 2024 WL 5327443, at *2 (citing *Stone*, 898 F.2d 1542 at 1544 (finding defendant's participation in discovery as though preparing for trial constituted a waiver of its right to arbitrate)); *Kinsale Ins. Co. v. Carrington Park Condo. Ass'n, Inc.*, No. 6:23-CV-2057-GAP-LHP, 2024 WL 4803206, at *3 (M.D. Fla. Jan. 25, 2024) ("participating in discovery related to the merits of pending litigation… constitute[s] waiver of a party's right to arbitration.")

Aetna's proceeding with discovery that clearly relates to arbitrable claims has compelled the filing of this motion to stay. Defendants cannot risk waiving their right to arbitrate; accordingly, Defendants will be forced to object to Aetna's requests in their entirety, likely resulting in extensive costly briefing on an expected motion to compel. Further, Defendants' defense of this action will be completely inhibited; they cannot serve discovery on Aetna without risking waiver. This one-sided discovery would clearly prejudice Defendants; that fact alone merits a stay of discovery pending determination of the Motion to Compel Arbitration. *See Falcon*, 2024 WL 639789, at *1 ("In deciding whether to stay discovery pending resolution of a motion, the Court inevitably must balance the harm produced by a delay in

discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery.") (citations omitted).

Further, in the very likely event that the Court grants Defendants' Motion to Compel Arbitration, much of the discovery sought would not be relevant to any of the non-arbitrable claims or allegations.[4] For example, Aetna's Interrogatory No. 8 requests RP to identify the legal effect of notices given by MBB under the Contract. Similarly, Aetna's Request No. 18 requests all documents and communications related to enrollment of providers to MBB, which only occurred with regards to Aetna when MBB was in-network with Aetna. Neither of those discovery requests have any relevance to any of Aetna's non-arbitrable NSA Period claims.

### B. DEFENDANTS' MOTION TO DISMISS IS CASE DISPOSITIVE AND WARRANTS A STAY OF DISCOVERY.

A stay of discovery is further warranted here because Defendants' pending Motion to Dismiss is meritorious and potentially case dispositive.

In ruling on a motion to stay discovery during the pendency of a dispositive motion, the Court must first take a preliminary peek at the merits of the motion to "determine whether it appears meritorious and case dispositive." *Mitchell*, 2024 WL 5327443, at *1; see also *Williams v. Bank of Am. Corp.*, No. 3:15-CV-1449-J-

---

[4] Even further, as noted in the Motion to Compel Arbitration and Motion to Dismiss, the purported basis for Aetna's Contracted Period claims and NSA Period claims is so intertwined that arbitration of the Contracted Period claims would resolve the many common threshold issues that apply to both periods.

39MCR, 2016 WL 11618570, at *1 (M.D. Fla. July 13, 2016) (same). Following this inquiry, the Court must then balance the harm produced by a delay in discovery against the possibility that the motion will be granted and eliminate the need for discovery. *McCabe*, 233 F.R.D. at 685.

A stay is appropriate where the movant shows it would incur substantial and potentially unnecessary costs if discovery went forward. *Latell v. Triano*, No. 2:13-cv-565-FtM-29CM, 2014 WL 5822663, at *1-2 (M.D. Fla. Feb. 28, 2014); *see also Khan v. Rundle*, No. 05-23123-CIV-ALTONAGA/Turnoff, 2006 WL 8433502, at *1 (S.D. Fla. July 17, 2006) (staying discovery because defendant's motion for judgment on the pleadings was "certainly case dispositive" and "weighing the likely costs and burdens of proceeding with discovery" demonstrated a stay of discovery was appropriate).

A preliminary peek at the Motion to Dismiss establishes that Aetna's allegations fail to state a claim for many reasons. As more fully argued in Defendants' Motion to Dismiss, Aetna's allegations involving the NSA Period fail because, *inter alia*:

- The NSA provides that CMS establishes and supervises IDR arbitrations. There is no NSA provision for courts to enjoin a party from submitting claims in the IDR process. Aetna cannot get prior restraint.

- Aetna failed to exhaust its administrative remedies under the NSA.

22

- Aetna cannot plead the fraud required to vacate the NSA IDR decisions in MBB's favor because the purported wrong was discoverable through due diligence and could have been raised to the NSA IDRs: Aetna alleges it terminated based on suspicions about MBB and RP. Plus, judicial notice confirms Aetna knew what it alleges here long prior, as far back as late 2021-early 2022.

- Aetna's allegations lack sufficient particularity to support fraud. Florida law confirms the medical group holding the hospital staffing department contract is the group that bills for the services, not other groups. Aetna did not allege that MBB lacked the staffing contracts or that the other groups held them, just that MBB has provided services through providers at one point affiliated with other RP-affiliated groups who are listed on websites identifying them as divisions of MBB.

- Aetna's allegations of interference and conspiracy cannot survive Aetna's allegations that RP owns, controls, and has a financial interest in MBB. Florida's stranger doctrine destroys these alleged torts.

*See* Motion to Dismiss at 4-5.

Defendants will incur substantial and unnecessary costs if discovery proceeds while the Motion to Dismiss is pending. Aetna's requests are broad and unduly burdensome, with 9 interrogatories and 38 requests for production, spanning a time-period of over 13 years (which clearly includes the Contracted Period). The Court will likely have to expend judicial resources to address the discovery disputes that

are sure to result from Aetna's overbroad discovery requests. These costs, to the parties and the Court, will be unnecessary if the Court ultimately dismisses Aetna's Complaint (as it should).

The costs of engaging in discovery clearly—and significantly—outweigh any negative effect on Aetna of a temporary delay in discovery. The Court has issued its Case Management and Scheduling Order [ECF No. 35] and fact discovery does not close until April 10, 2026—almost thirteen months from now. And, there is no discovery necessary to resolve the pending Motion to Dismiss. *See Patterson v. U.S. Postal Servs.*, 901 F.2d 927, 929 (11th Cir. 1990) (holding that the district court did not abuse its discretion in staying discovery because further discovery was not necessary to resolve a pending motion to dismiss); *McCabe*, 233 F.R.D. at 687. The stay of discovery would only last until the Court disposes of Defendants' Motion to Dismiss, and it would have no impact on the full discovery period available to Aetna should the Court allow the case to proceed.

## VI.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court issue an order staying discovery, or issue a protective order under Fed. R. Civ. P. 26(c), staying discovery, until after the Court rules on Defendants' pending Motion To Compel Arbitration and Defendants' Motion To Dismiss.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel for Defendants conferred with counsel for Plaintiffs on March 10, 2025 by telephone, and Plaintiffs oppose the relief sought herein.

Respectfully submitted this 19th day of March, 2025.

Glenn Solomon
*Admitted Pro Hac Vice*
Christopher Charles Jew
*Admitted Pro Hac Vice*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: 213-443-4355
Facsimile: 213-443-4310
Email: gsolomon@kslaw.com
      cjew@kslaw.com

Sara Brinkmann
*Admitted Pro Hac Vice*
**KING & SPALDING LLP**
1100 Louisiana Street, Suite 4100
Houston, TX 77002-5213
Telephone: 713-751-3200
Facsimile: 713-751-3290
Email: sbrinkmann@kslaw.com

*/s/Samantha J. Kavanaugh*
Samantha J. Kavanaugh
Florida Bar No.: 0194662
Michael H. Thompson
Florida Bar No.: 1045189
**KING & SPALDING LLP**
Southeast Financial Center
200 S. Biscayne Blvd., Suite 4700
Miami, FL 33131
Telephone: 305-462-6000
Facsimile: 305-462-6100
Email: skavanaugh@kslaw.com
      mhthompson@kslaw.com

*Counsel for Defendants Radiology Partners, Inc. and Mori, Bean, and Brooks, Inc.*