# Exhibit A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| AETNA HEALTH INC., AETNA LIFE INSURANCE COMPANY, and AETNA HEALTH INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>RADIOLOGY PARTNERS, INC. and MORI, BEAN AND BROOKS, INC.,<br><br>Defendants. | Case No. 3:24-CV-01343-BJD-LLL |

**AETNA'S FIRST SET OF INTERROGATORIES TO
DEFENDANT RADIOLOGY PARTNERS, INC.**

PLEASE TAKE NOTICE that Plaintiffs Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Insurance Company (collectively "Aetna") request answers and responses by Defendant Radiology Partners, Inc. ("Radiology Partners") to the following interrogatories ("First Set of Interrogatories") within thirty days of service hereof.

**INSTRUCTIONS**

1. Radiology Partners should respond to each and every interrogatory fully and completely.

2. In answering these interrogatories, Radiology Partners is required to furnish all information available to it, not merely such information as the persons preparing the responses knows within their own personal knowledge. In answering these interrogatories, Radiology Partners should make a reasonably diligent search of the records or other papers and materials in

- 1 -

its possession or the possession of its employees, attorneys, consultants, or other representatives, to the extent necessary to provide responsive information.

3. If Radiology Partners cannot respond to an interrogatory fully, after a reasonably diligent attempt to obtain the requested information, Radiology Partners is required to answer the interrogatory to the fullest extent possible, specify the portion of the interrogatory it is unable to answer, and provide whatever information it has regarding the unanswered portion.

4. If Radiology Partners does not respond to an interrogatory, in whole or in part, on the grounds of privilege, for each such interrogatory provide: (i) the person or persons who have knowledge of the withheld information; (ii) the basis for the claim of privilege; and (iii) a description of the information adequate to support the contention that the information withheld is privileged.

5. Unless otherwise specified, the interrogatories pertain to the period beginning on January 1, 2012, through the present day.

## DEFINITIONS

Unless otherwise stated, the following definitions apply to the terms used in Aetna's interrogatories:

1. "Aetna" or "Plaintiffs" refers to Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Insurance Company, together with any affiliates, parent companies, subsidiaries, joint ventures or other associated entities or individuals, including predecessors and successors-in-interest, and any persons, officers, employees, counsel, agents, consultants, or representatives acting for or on behalf of the same.

2. "Aetna member" means any patient who was enrolled in an Aetna fully insured or self-funded plan, and received services rendered by an Affiliated Medical Group.

3. "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more individuals or entities, together with any addenda or other matter incorporated therein and any modifications or amendments thereto.

4. "Any" means all or each and every item.

5. "Communication" means the transmittal of information in any form or medium. The term is not limited to transfers between persons, but also includes other transfers including records and memoranda to file; any written letter, memorandum, e-mail, or other document which was sent by one or more individuals to another or others; any text or other message sent or received via a company-provided or company-paid phone or device; any telephone call between one or more individuals and any other or others, whether such call was by chance or prearranged, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged, formal or informal.

6. "Document" means without limitation, any written, recorded, or graphic material, printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard-disk or other electronic data storage medium, or any other TeamHealth-specific storage medium, whether or not claimed to be privileged, confidential, immune or otherwise properly withheld from discovery. The term includes "communications" as defined above as well as notes; letters; correspondence; facsimiles; telegrams; memoranda; summaries or records of meetings; diaries; reports; laboratory and research reports and notebooks; recorded experiments; charts; plans; drawings; diagrams; schematic diagrams; illustrations; engineering blueprints; chart descriptions; product analysis; requests for proposals; documents related to proposed or actual product improvements or changes; user manuals or guides; product catalogues, guides, or manuals; technical descriptions; product repair manuals or guides; photographs; video

images; videotapes; CDs; DVDs; software flow charts or descriptions; product functional descriptions; minutes or records of meetings; summaries of interviews, reports, or investigations; opinions or reports of consultants; reports of patent searches; patent appraisals; opinions of counsel; agreements; reports or summaries of negotiation; brochures; pamphlets; advertisements; circulars; trade letters; press releases; drafts of documents; and all other material fixed in a tangible medium of expression of whatever kind, including the original and every non-identical copy or reproduction in your possession, custody, or control.

7. "Identify" means:

    a.    in the case of a natural person, to state the person's full name, address, telephone number, email address, employer, and title or position;

    b.    in the case of a person other than a natural person, to state its full name, form of its organization (corporation, partnership, etc.), principal place of business, telephone number, and email address; and

    c.    in the case of a document, to state its title, author, the addressee and all other persons receiving copies, the type of document, the date of preparation, and the Bates number or other similar identifying number or label.

8. "Person" means any natural person, corporation, company, proprietorship, partnership, joint venture, association, firm, governmental entity, or any other entity recognized by law, and shall include the owners, officers, directors, agents, trustees, parents or subsidiaries, affiliates, assignees, predecessors, and successors of each such "person."

9. "Related to," "relating to," and their forms shall be given their broadest possible meaning, including but not limited to: referring to, describing, evidencing, concerning,

constituting, mentioning, containing, discussing, analyzing, pertaining to, being connected with, resulting from, reflecting upon, in whole or in part, directly or indirectly, the stated subject matter.

10. "Radiology Partners," "You," or "Your" refers to Defendant Radiology Partners, Inc., and any employees, representatives, agents, contractors, management companies, or anyone else working on its behalf.

11. "MBB" refers to Defendant Mori, Bean and Brooks, Inc., and any employees, representatives, agents, contractors, management companies, or anyone else working on its behalf.

12. "Affiliated Medical Group" shall mean any medical group that Radiology Partners has acquired the stock of and/or that Radiology Partners has executed a management services agreement with.

13. "Rendering Provider" means any physician, physicians' assistant, nurse practitioner, or other medical providers who rendered services that were billed to Aetna using MBB's TIN.

14. "Successor Agreement" shall mean agreements in place with Radiology Partners affiliated practices in states in which corporate practice of medicine laws prohibit any entity other than a professional corporation or similar professional organization from practicing medicine by which, upon the occurrence of a triggering event, RP Holdings has a call option to direct the owner of the applicable physician owned practice to transfer, for nominal consideration, its equity interest to any other person designated by RP Holdings.

15. "Investing Private Equity Firms" shall mean any private equity firm, venture capital firm, or other institutional investor that has provided Radiology Partners with capital or credit in excess of $50 million, including but not limited to New Enterprise Associates, Starr Investment Holdings, and the Future Fund.

16. "Platform TIN Strategy" refers to the practice and/or strategy of billing all claims for reimbursement in a given geographic market or state for Radiology Partners' affiliated medical group under one medical group's Tax Identification Number ("TIN").

17. "TIN" means tax identification number.

18. "Network Agreement" means the Physician Group Agreement executed in 2001 between MBB and Aetna, and all amendments thereto.

19. In construing this First Set of Interrogatories, the singular form of a noun or pronoun shall include its plural form, and vice versa; and the conjunctions "and" and "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of this First Set of Interrogatories all information that might otherwise be construed to be outside its scope.

# INTERROGATORIES

**INTERROGATORY NO. 1:** Describe the history, nature, and circumstances relating Radiology Partners relationship to each Affiliated Medical Group in Florida, including but not limited to:

   a. The name of each medical group, including legal name and any trade names;

   b. The Tax Identification Number(s) of each medical group;

   c. The date that Radiology Partners acquired the stock of each medical group;

   d. The price and/or total consideration that Radiology Partners paid to acquire the stock of each medical group;

   e. The date that Radiology Partners executed a management services agreement with each medical group;

   f. The owner(s) of each medical group from acquisition through present; and

   g. The dates that Radiology Partners executed Successor Agreements and/or any other contracts with the owners of each medical group.

**INTERROGATORY NO. 2:** Identify each person involved in the selection of which TIN would be used to bill for services provided to Aetna members in Florida by Affiliated Medical Groups, including their respective title(s), role(s), and which entity they were employed by.

**INTERROGATORY NO. 3:** Identify all employees, partners, or shareholders of MBB, and their National Provider Identifier, prior to MBB's affiliation with Radiology Partners.

**INTERROGATORY NO. 4:** Describe MBB's relationship with each Affiliated Medical Group in Florida.

**INTERROGATORY NO. 5:** Identify every lawsuit in which a Rendering Provider is or was a party from 2019 to present, including the venue, case caption, and case number, where information,

answers, pleadings, or discovery related to the Rendering Provider's relationship with Radiology Partners and/or an Affiliated Medical Group.

**INTERROGATORY NO. 6:** Identify and describe all investments, funding, credit, or other financial assistance that Radiology Partners has received from an Investing Private Equity Firm, including:

   a. The amount Radiology Partners received;

   b. The terms of the credit/investment; and

   c. The Investing Private Equity Firm's ownership stakes.

**INTERROGATORY NO. 7:** Identify each Person who had Communications with an Investing Private Equity Firm related to the Platform TIN Strategy, including but not limited to Communications regarding: strategies to consolidate the radiology market; evaluating potential medical groups for acquisition; the acquisition of medical groups; implementing the Platform TIN Strategy; providing notice to payors of medical group acquisitions and the Platform TIN Strategy; and expectations, projections; and reporting of profits, revenues, and returns on investment. .

**INTERROGATORY NO. 8:** Describe each notice that RP, MBB, and/or someone acting on behalf of MBB provided to Aetna under the Network Agreement, including but not limited to:

   a. A description of the notice that was provided;

   b. The date the notice was sent by MBB;

   c. The provision of the Agreement that the notice was provided pursuant to; and,

   d. The effect that You contend the notice had or has under the Network Agreement.

**INTERROGATORY NO. 9:** Describe the process for how Radiology Partners or MBB assigns radiologists to complete readings for patient scans or images at facilities in Florida contracted with MBB.

| | |
|---|---|
| Date: February 21, 2025 | Respectfully submitted, |
| | By: /s/ Nathaniel J. Moore |
| | **ROBINS KAPLAN LLP** |
| | Jared J. Burns<br>Fla. Bar #1003415<br>JBurns@robinskaplan.com<br>10151 Deerwood Park Blvd.,<br>Building 200, Suite 250<br>Jacksonville, FL 32256<br>P: (612) 349-8500 |
| | Nathaniel J. Moore (*pro hac vice*)<br>NMoore@robinskaplan.com<br>Marcus A Guith (*pro hac vice*)<br>MGuith@robinskaplan.com<br>Kyle D. Nelson (*pro hac vice*)<br>KNelson@robinskaplan.com<br>800 LaSalle Avenue, Suite 2800<br>Minneapolis, MN 55402<br>P: 612.349.8500 |
| | Paul D. Weller (*pro hac vice*)<br>PWeller@robinskaplan.com<br>1325 Avenue of the Americas, Suite 2601<br>New York, New York 10019<br>P: 212.980.7400 |
| | *Attorneys for Plaintiffs Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Insurance Company* |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing *AETNA'S FIRST SET OF INTERROGATORIES TO DEFENDANT RADIOLOGY PARTNERS, INC.* was electronically served on counsel of record via email on February 21, 2025.

/s/ Kyle D. Nelson

- 10 -