# Exhibit B

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| AETNA HEALTH INC., AETNA LIFE INSURANCE COMPANY, and AETNA HEALTH INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>RADIOLOGY PARTNERS, INC. and MORI, BEAN AND BROOKS, INC.,<br><br>Defendants. | Case No. 3:24-CV-01343-BJD-LLL |

**AETNA'S FIRST SET OF REQUESTS FOR PRODUCTION TO**
**DEFENDANT RADIOLOGY PARTNERS, INC.**

PLEASE TAKE NOTICE that Plaintiffs Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Insurance Company (collectively "Aetna") request Radiology Partners, Inc. ("Radiology Partners") to produce documents to the following requests for production of documents ("First Set of Requests for Production") within thirty days of service hereof.

**DEFINITIONS**

Unless otherwise stated, the following definitions apply to the terms used in Aetna's requests for production:

1. "Radiology Partners," "You," or "Your" refers to Defendant Radiology Partners, Inc., and any employees, representatives, agents, contractors, management companies, or anyone else working on its behalf.

2. "Aetna" or "Plaintiffs" refers to Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Insurance Company, together with any affiliates, parent companies, subsidiaries,

- 1 -

joint ventures or other associated entities or individuals, including predecessors and successors-in-interest, and any persons, officers, employees, counsel, agents, consultants, or representatives acting for or on behalf of the same.

3.   "MBB" refers to Defendant Mori, Bean and Brooks, Inc., and any employees, representatives, agents, contractors, management companies, or anyone else working on its behalf.

4.   "Affiliated Medical Groups" shall mean any medical group that Radiology Partners has acquired the stock of and/or that Radiology Partners has executed a management services agreement with.

5.   "Rendering Provider" means any physician, physicians' assistant, nurse practitioner, or other medical providers who rendered services that were billed to Aetna using MBB's TIN.

6.   "Platform TIN Strategy" refers to the practice and/or strategy of billing all claims for reimbursement in a given geographic market or state for an Affiliated Medical Group under one medical group's Tax Identification Number ("TIN").

7.   "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more individuals or entities, together with any addenda or other matter incorporated therein and any modifications or amendments thereto.

8.   "Any" means all or each and every item.

9.   "Communication" means the transmittal of information in any form or medium. The term is not limited to transfers between persons, but also includes other transfers including records and memoranda to file; any written letter, memorandum, e-mail, or other document which was sent by one or more individuals to another or others; any text or other message sent or received via a company-provided or company-paid phone or device, any telephone call between one or more individuals and any other or others, whether such call was by chance or prearranged, formal or

informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged, formal or informal.

10. "Document" means without limitation, any written, recorded, or graphic material, printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard-disk or other electronic data storage medium, or any other TeamHealth-specific storage medium, whether or not claimed to be privileged, confidential, immune or otherwise properly withheld from discovery. The term includes "communications" as defined above as well as notes; letters; correspondence; facsimiles; telegrams; memoranda; summaries or records of meetings; diaries; reports; laboratory and research reports and notebooks; recorded experiments; charts; plans; drawings; diagrams; schematic diagrams; illustrations; engineering blueprints; chart descriptions; product analysis; requests for proposals; documents related to proposed or actual product improvements or changes; user manuals or guides; product catalogues, guides, or manuals; technical descriptions; product repair manuals or guides; photographs; video images; videotapes; CDs; DVDs; software flow charts or descriptions; product functional descriptions; minutes or records of meetings; summaries of interviews, reports, or investigations; opinions or reports of consultants; reports of patent searches; patent appraisals; opinions of counsel; agreements; reports or summaries of negotiation; brochures; pamphlets; advertisements; circulars; trade letters; press releases; drafts of documents; and all other material fixed in a tangible medium of expression of whatever kind, including the original and every non-identical copy or reproduction in your possession, custody, or control.

11. "Person" means any natural person, corporation, company, proprietorship, partnership, joint venture, association, firm, governmental entity, or any other entity recognized

by law, and shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, assignees, predecessors, and successors of each such "person."

12. "Related to," "relating to," and their forms shall be given their broadest possible meaning, including but not limited to: referring to, describing, evidencing, concerning, constituting, mentioning, containing, discussing, analyzing, pertaining to, being connected with, resulting from, reflecting upon, in whole or in part, directly or indirectly, the stated subject matter.

13. "TIN" means tax identification number.

14. "NSA" means the No Suprises Act, 42 U.S.C. §§ 300gg-111.

15. "IDR" means the independent dispute resolution process under the NSA.

16. "Modeling" refers to analyzing, projecting, or assessing reimbursements from a payor for a medical group and/or for a medical group's contracts with payors.

17. In construing this First Set of Requests for Production, the singular form of a noun or pronoun shall include its plural form, and vice versa; and the conjunctions "and" and "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of this First Set of Requests for Production all information that might otherwise be construed to be outside its scope.

## INSTRUCTIONS

1. Each Request set forth below shall apply to documents in your possession or custody, or under your control, as well as in the possession of any parent or sister company, your employees, agents, representatives, officers, directors, consultants, or any other person acting or purporting to act on your behalf, including, unless privileged and such privilege has not been waived, your attorneys.

2. Documents shall be produced either: (a) as they are kept in the usual course of business (in which case they shall be produced in such fashion as to identify the department, branch, or

office in whose possession it was located, and where applicable, the natural person in whose possession it was found or the server or central file in which it was found, and the address of each document's custodian(s)), or (b) segregated as responsive to a specific Request enumerated in these Requests, with such specific Request identified.

3. In producing documents, please produce a legible copy of each document requested together with all non-identical copies and drafts of that document. You shall retain all of the original documents for inspection or copying throughout the pendency of this case, any appeal(s), and any related proceedings.

4. Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications, and other versions of a document is a responsive document in its own right and must be produced.

5. If any portion of any document is responsive to any Request, then the entire document must be produced, including all attachments and enclosures.

6. In instances where two or more exact duplicates of any document exist, the most legible copy shall be produced.

7. You should respond to every Request for Production fully and completely. If you object to a Request, you should specifically and separately state each reason for your objection(s).

8. If you withhold any document based on an objection to a Request, you must still produce all documents covered by that Request and not subject to your objection.

9. If you cannot produce a document that is responsive to a Request, state as much and indicate whether the document ever existed or whether the document once existed but cannot be located. If any responsive document once was, but is no longer, in your possession, custody, or

control, state the whereabouts of such document when last in your possession, custody, or control, state the manner of its disposition, and identify its last known custodian. To the extent any responsive document was lost or destroyed, produce any document that supports your assertion that the document was lost or destroyed, and provide the date when each such document was lost or destroyed.

10. Other than redactions of privileged information, documents are to be produced in full and may not be redacted in any manner.

11. If you withhold a document or part of a document because it contains privileged content, produce it to the extent possible, and provide the information required in Section VI.A.2 of the Middle District of Florida Discovery Handbook.

12. Any Request that demands the production of documents "sufficient to show" requires you to produce only those documents necessary to provide all the information necessary to show, identify, or describe the subject matter requested.

13. Where it is necessary to bring within the scope of these Requests information that might otherwise be construed to be outside their scope, the use of a verb in any tense shall be recognized as the use of that verb in all other tenses.

14. These Requests are continuing and require supplemental responses if a response is incomplete or inaccurate.

15. Unless otherwise specified, the First Set of Requests for Production pertain to the period beginning on January 1, 2012, through the present day.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** Documents sufficient to identify Your organizational structure, including Your relationship with all Affiliated Medical Groups and Your shareholders, officers, and management team.

**REQUEST NO. 2:** All Documents related to Your acquisition of Affiliated Medical Groups in Florida, including MBB. This request includes but is not limited to Documents regarding pitches and marketing materials to the Affiliated Medical Groups; pre-acquisition due diligence completed on the Affiliated Medical Groups; how the acquisition is to be and was structured; and stock purchase agreements, contribution agreements, operating agreements, and other documents formalizing the acquisitions.

**REQUEST NO. 3:** All Documents and Communications related to responding to Aetna's inquiries and communications regarding an increase in the number of claims submitted by MBB to Aetna.

**REQUEST NO. 4:** All Documents and Communications related to responding to Aetna's inquiries and communications regarding executing a new participation agreement.

**REQUEST NO. 5:** All Documents and Communications related to formulating, devising, evaluating the appropriateness of, and implementing the Platform TIN Strategy. This request includes but is not limited to Documents and Communications regarding strategies to consolidate the radiology market; evaluating potential medical groups for acquisition; the acquisition of medical groups; implementing the Platform TIN Strategy; providing notice to payors of medical group acquisitions and the Platform TIN Strategy; and expectations, projections, and reporting of profits, revenues, and returns on investment.

**REQUEST NO. 6:** All Documents and Communications related to devising, evaluating, implementing, and effectuating the Platform TIN Strategy in Florida.

**REQUEST NO. 7:** All briefs or submissions You submitted to any NSA IDR entity for the claims at issue in Exhibit A to Plaintiffs' complaint.

**REQUEST NO. 8:** All Documents and Communications You relied on to formulate the briefs or submissions submitted to the arbitrators during the IDR process for the claims at issue in Exhibit A to Plaintiffs' complaint.

**REQUEST NO. 9:** All Documents and Communications related to Your efforts, strategy, and desire to obtain a new network agreement with Aetna for MBB after termination of the Network Agreement.

**REQUEST NO. 10:** All Documents and Communications related to any pre-acquisition and post-acquisition Modeling for the Affiliated Medical Groups in Florida. This request includes but is not limited to Documents and Communications demonstrating the Modeling itself, as well as any commentary, discussion, or analysis related to the Modeling.

**REQUEST NO. 11:** All contracts and agreements between and amongst MBB and Radiology Partners or other Affiliated Medical Groups.

**REQUEST NO. 12:** All Documents related to Your business strategy You sent to private equity firms prior to their investment or potential investment in Radiology Partners.

**REQUEST NO. 13:** All presentations, Documents, and Communications given to or exchanged with Radiology Partners' Board of Directors regarding Radiology Partners' billing strategies and/or the Platform TIN Strategy.

**REQUEST NO. 14:** All Documents that MBB and the Affiliated Medical Groups in Florida provided to Radiology Partners prior to being acquired by Radiology Partners.

**REQUEST NO. 15:** All contracts or agreements between Radiology Partners and any Affiliated Medical Groups in Florida, including MBB.

**REQUEST NO. 16:** All Documents and Communications relating to concealing and hiding the Platform TIN Strategy from Payors and/or not notifying or otherwise alerting Payors to the Platform TIN Strategy. This request includes but is not limited to Documents and Communications regarding directives, instructions, or guides in how to interact with Payors; discussions or directives regarding providing Payors with notices; and discussions or directives regarding limitations on the number of providers to enroll in a given time period under a TIN.

**REQUEST NO. 17:** All employment agreements for the Rendering Providers that cover the whole time during which the Rendering Provider was having services billed under MBB's TIN.

**REQUEST NO. 18:** All Documents and Communications related to enrolling Rendering Providers under MBB's TIN. This request includes but is not limited to Documents and Communications regarding decisions and directives to enroll providers from the Affiliated Medical Groups under MBB's TIN; discussions or explanations as to the motivations for enrolling providers from the Affiliated Medical Groups under MBB's TIN; discussions or directives regarding "go-live" dates for enrolling and/or billing; and decisions, discussions, and directives regarding providing notice to Payors related to enrolling Rendering Providers under MBB's TIN.

**REQUEST NO. 19:** Documents sufficient to identify the "Division" and/or medical group that Radiology Partners internally has assigned to each Rendering Provider.

**REQUEST NO. 20:** Documents sufficient to identify how each of the Rendering Providers was compensated for services billed under MBB's TIN and what entity, organization, or account paid such compensation.

**REQUEST NO. 21:** Certificates of coverage for any malpractice insurance policies applicable to each of the Rendering Providers that cover the whole time the provider was having services billed under MBB's TIN.

**REQUEST NO. 22:** Documents and Communications related to the provision of radiology services at hospitals by MBB. This request is limited to external and internal Communications regarding assigning contracts from Affiliated Medical Groups to MBB, and any marketing materials and/or PowerPoint presentations provided to hospitals related to MBB.

**REQUEST NO. 23:** Documents and Communications related to the supervision of the Rendering Providers, including but not limited to the members, structure, responsibilities, and purview of the applicable Local Practice Board(s).

**REQUEST NO. 24:** All Documents related to Your strategy to initiate NSA IDR arbitrations in bulk.

**REQUEST NO. 25:** All Documents and Communications related to complaints You received from Your employees, Affiliated Medical Groups, or any payor, including state or federal governments, relating to the manner in which You bill for services allegedly provided by Affiliated Medical Groups.

**REQUEST NO. 26:** All Communications between You and hospitals who contracted with Affiliated Medical Groups regarding the relationship between those Affiliated Medical Groups and MBB.

**REQUEST NO. 27:** All Documents related to the statement by Boca Radiology Group and Radiology Associates of Florida that they are "division[s] of Mori, Bean, and Brooks" and "provide radiology services to patients throughout the United States, including Mori, Bean, and Brooks, Inc."

**REQUEST NO. 28:** All agreements between Radiology Partners and owners of the Affiliated Medical Groups in Florida.

**REQUEST NO. 29:** All Documents You have sent to the federal government and/or state government regarding any federal and/or state investigation into Radiology Partners and/or MBB.

**REQUEST NO 30:** All Documents related to or demonstrating Your and/or the Affiliated Medical Group's share of the market for radiology services in Florida.

**REQUEST NO. 31:** All offering memorandums, prospectuses, PowerPoints, pitches, or other disclosures made to potential and actual investors in Radiology Partners and/or its corporate affiliates provided by or on behalf of Radiology Partners.

**REQUEST NO. 32:** All consolidated and consolidating financial statements for Radiology Partners and the Affiliated Medical Groups in Florida from 2017 to present.

**REQUEST NO. 33**: All Documents and Communications related to or discussing Your strategy, plan, or efforts to utilize the NSA as a means to increase reimbursements and/or obtain new network contracts from payors.

**REQUEST NO 34**: Documents sufficient to identify the facility or hospital that the Rendering Providers rendered care at for all medical services that were billed to Aetna from 2016 to present.

Date: February 21, 2025                    Respectfully submitted,

                                           By: /s/ Nathaniel J. Moore

                                           **ROBINS KAPLAN LLP**

                                           Jared J. Burns
                                           Fla. Bar #1003415
                                           JBurns@robinskaplan.com
                                           10151 Deerwood Park Blvd.,
                                           Building 200, Suite 250
                                           Jacksonville, FL 32256
                                           P: (612) 349-8500

                                           Nathaniel J. Moore (*pro hac vice*)
                                           NMoore@robinskaplan.com
                                           Marcus A Guith (*pro hac vice*)
                                           MGuith@robinskaplan.com
                                           Kyle D. Nelson (*pro hac vice*)
                                           KNelson@robinskaplan.com
                                           800 LaSalle Avenue, Suite 2800
                                           Minneapolis, MN 55402
                                           P: 612.349.8500

                                           Paul D. Weller (*pro hac vice*)
                                           PWeller@robinskaplan.com
                                           1325 Avenue of the Americas, Suite 2601
                                           New York, New York 10019
                                           P: 212.980.7400

                                           *Attorneys for Plaintiffs Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Insurance Company*

- 13 -

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing *AETNA'S FIRST SET OF INTERROGATORIES TO DEFENDANT RADIOLOGY PARTNERS, INC.* was electronically served on counsel of record via email on February 21, 2025.

/s/ Kyle D. Nelson