UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AETNA HEALTH INC. et al.,

     Plaintiff,

v.                                                     Case No. 3:24-cv-1343-BJD-LLL

RADIOLOGY PARTNERS, INC.,
and MORI, BEAN AND BROOKS,
INC.,

     Defendants.

                               /

## O R D E R

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss
the Amended Complaint (Doc. 84), Plaintiffs' Response in Opposition (Doc.
90), and Defendants' Notice of Supplemental Authority (Doc. 91).

Plaintiffs are a tripartite conglomeration that make up the nationally
known Aetna health insurance brand. (Doc. 80 ¶1; AC). Defendant Radiology
Partners, Inc., ("RP"), is a "private equity-backed aggregator of radiology
practices across" the United States. Id.  ¶3. Once RP acquires a practice, it
essentially controls and manages all aspects of the practice but conceals the
extent of that control to "appear compliant" with state regulations, including
potential prohibitions on the "corporate practice of medicine." Id.

One of the nine practices RP acquired in Florida was Defendant Mori, Bean and Brooks, Inc., ("MBB"), which had the most lucrative reimbursement contact with Aetna within the state. Id. ¶5. After RP acquired MBB, MBB's claim submissions skyrocketed. Id. ¶6. Aetna contends—and for purposes of this Motion, the Court accepts that contention—that RP funneled its other Florida radiology practices' claims through MBB to obtain higher reimbursements. Id. ¶6. Aetna inquired into the increase in the number of claims but MBB "deflected Aetna's inquiries." Id. Aetna responded by terminating MBB's in-network contract, which meant MBB would now be considered an "out-of-network" provider. Id. The other Florida RP radiology providers remained "in-network."[1]

The gravamen of the Amended Complaint is that once Aetna terminated its contract with MBB, RP continued submitting its other practices' claim through MBB forcing Aetna to reimburse MBB at an even higher rate out-of-network rate. Id. ¶8. The other RP entities billing through MBB did so despite not actually being fairly classified as a MBB provider. Id. This allowed RP to collect "significantly more for the same services provided by the same physicians at the same hospitals." Id. ¶9.

---

[1] The critical difference between an in-network provider and out-of-network provider is the former means there is a predetermined amount negotiated between the provider and insurance company that limits the cost passed on to the patient, while the latter leaves the uncovered amounts uncapped and owed by the patient.

The scheme relied on the recent enactment of the No Surprises Act ("NSA" or the "Act") 42. U.S.C. §§ 300gg-111, which, as its name implies, aims to reduce surprise billing by out-of-network providers to unwitting patients.[2] Id. ¶10; see also Med-Trans Corp. v. Cap. Health Plan, Inc., 700 F. Supp. 3d 1076, 1079 (M.D. Fla. 2023), aff'd sub nom. Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc., 160 F.4th 1110 (11th Cir. 2025) ("Its main purpose was to end surprise medical billing by ensuring that certain out-of-network providers . . . are treated the same as in-network providers."). To that end, the Act requires the out-of-network provider to submit its bill to the patient's insurer, who must offer to settle the claim or refuse to pay the claim altogether. Med-Trans Corp., 700 F. Supp. 3d at 1079.

If the insurer and provider fail to agree, the dispute is forwarded to the Independent Dispute Resolution ("IDR") for "baseball style" arbitration. Id. After an arbitrator is assigned (or mutually agreed upon), the parties submit their best offers to the arbitrator, who must pick just one (no compromises or adjustments can be made) that the arbitrator believes best represents the equivalent in-network reimbursement rate. Id. The decision is "not . . . subject to judicial review except on the same grounds as are available to

---

[2] An example of this would be a patient receiving emergency services or undergoing a procedure at an in-network hospital who then contracted with an out-of-network anesthesiologist to assist with a patient's surgery.

review awards under the Federal Arbitration Act[,]" such as the existence of a fraudulent claim or evidence of misrepresentation of facts. Id at 1080 (citing § 300gg-111(c)(5)(E)(i)(II) (citing 9 U.S.C. § 10(a)(1)–(4))) (internal quotations omitted).

RP, using MBB, submitted tens of thousands of disputes under the NSA's IDR process that were premised on Defendants' misrepresentations that the services were provided by MBB, when they had been performed by other non-MBB providers. AC ¶11. Defendants knowingly and falsely certified the claims to both Aetna and the IDR administrators and obtained millions in awards from the IDR process. Id. ¶¶12-15. Aetna now seeks to have the IDR awards vacated and to recover damages from the fees associated with having to participate in the IDR process, and further to have disputed claims not yet filed with the IDR to be limited. Defendants responded with their Motion to Dismiss contending that there was no fraud; any fraud was not sufficiently pled, and further, the IDR awards are not reviewable.

Where a complaint alleges acts of fraud, it "must satisfy two pleading requirements [: Fed. R. Civ. P. 8(a)(2) and Rule 9(b)]." U.S. ex rel. Matheny v. Medco Health Solutions, Inc., 671 F.3d 1217, 1225 (11th Cir. 2012). In satisfying Rule 8(a)(2), a complaint needs to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570, 127 S.Ct. 1955 (2007).  While "detailed factual allegations" are not required, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). In assessing the factual allegations "[w]e . . . construe them in the light most favorable to the plaintiff." Pereda v. Brookdale Senior Living Communties, Inc., 666 F.3d 1269, 1272 (11th Cir. 2012) (citation and quotations omitted). Pleadings "must" be "a short and plain statement of the claim[s] showing that the pleader is entitled to relief[.]" Fed. R. Civ. P 8(a)(2).

Plaintiff must also meet Rule 9(b)'s heightened standard by "stat[ing] with particularity the circumstances constituting fraud." U.S. ex rel. Schubert v. All Children's Health Sys., Inc., No. 8:11-CV-1687-T-27EAJ, 2013 WL 1651811, at *1 (M.D. Fla. Apr. 16, 2013) (quoting Fed. R. Civ. P. 9(b)). "The particularity requirement of Rule 9(b) is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." Id. (citing Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009) (quotations omitted)). However, "knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). "The purpose of Rule 9(b) is to alert defendants to the precise misconduct with which they are charged and protect defendants against spurious charges."

- 5 -

<u>Matheny</u>, 671 F.3d at 1222 (citations and quotation omitted). Rule 9(b)'s heightened standard is tempered, however, in situations when the "alleged fraud occurred over an extended period of time and consisted of numerous acts." <u>U.S. ex rel. Butler v. Magellan Health Servs., Inc.</u>, 74 F. Supp. 2d 1201, 1215 (M.D. Fla. 1999).

Starting with Rule 8's less demanding standard, the Court finds that the Complaint is anything but short but it does not necessarily violate Rule 8 for that reason alone. The Complaint sets forth the facts in numbered and organized paragraphs, most of which are pertinent to the claims, and clearly states the nature of Plaintiffs' claims. As to Rule 9, in <u>Linville v. Ginn Real Est. Co., LLC</u> 697 F. Supp. 2d 1302, 1309 (M.D. Fla. 2010), the court held that allegations failed to meet Rule 9(b)'s requirements where they failed to specify "which" agents made the statements, "when" the statements were made and "where" the statements were made.

Aetna does not make those same fatal mistakes. For example, Aetna listed a September 18, 2022 claim from Dr. Nouri billed under MBB's provider tax identification number despite Dr. Nouri working for Radiology Associates of South Florida on the opposite end of the state. AC ¶ 69. The location, date, and individual/entity are all specifically identified. Further, Aetna was harmed because it ultimately was ordered by the IDR arbitrator to

pay MBB an out-of-network amount of $752.00 instead of the in-network fee of $78.89. Id. ¶¶69-70.

Outside of stating a claim for fraud, the Court must determine whether the fraud is alleged in a manner to allow for review of the IDR awards. With limited exceptions as described by the Federal Arbitration Act, IDR decisions under the NSA are not reviewable. Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc., 160 F.4th 1110, 1118 (11th Cir. 2025). A plaintiff bears a "heavy burden of demonstrating that vacatur is appropriate . . . by proving the existence of one or more of four statutorily enumerated causes for reversal set forth in 9 U.S.C. § 10(a)(1)-(4)." Wiand v. Schneiderman, 778 F.3d 917, 925 (11th Cir. 2015) (internal citation omitted). Fraud is one of those enumerated causes. Id.; Reach Air Med. Servs. LLC, 160 F.4th at 1121 ("FAA Section 10(a)(1) [ ] permits vacatur of an arbitration award when 'the award was procured by . . . fraud,' 9 U.S.C. § 10(a)(1)[.]").

To establish fraud, the plaintiff must:

> [(1)] establish the fraud by clear and convincing evidence"; (2) "the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration"; and (3) "the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration."

Reach Air Med. Servs. LLC, 160 F.4th at 1121 (quoting Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir. 1988)).

As discussed above, Aetna has sufficiently alleged Defendants fraudulently submitted claims for reimbursement as out-of-network providers. Those claims resulted in IDR awards that injured Aetna by causing Aetna to incur arbitration fees and to pay at a rate higher than it would have if the claims were submitted as being performed by in-network providers.

Defendants strongest defense is that the fraud was discoverable upon the exercise of due diligence prior to or during arbitration. In the Amended Complaint, Aetna states that it terminated its contract with MBB because MBB was submitting in-network claims from providers across the state that were not employees of MBB. This occurred, necessarily, before MBB became an out-of-network provider through which non-MBB providers submitted claims. Though Aetna attempts to describe Defendants' efforts to shield the true origin of the claims, the Court is mindful of Aetna's "heavy burden" to upend administrative decisions on the basis of fraud. While a close call, the allegations presented in the Amended Complaint fail to establish a sufficient basis excusing Aetna from challenging the IDR disputes on the basis that they were wrongfully submitted by in-network providers. Aetna's own admission that it knew RP and MBB were engaged in that very act as the

- 8 -

reason for the termination of the in-network contract is fatal to Aetna's position. While Aetna cites the thousands of claim submissions and Defendants' efforts to conceal the nature of the fraud, it cannot excuse Aetna's failure to raise the issue in the IDR disputes.

As to the remaining claims, they are all premised on the same facts as Aetna's claims of fraud but rely on different legal theories for recovery. Aetna's attempt to end-around the NSA and FAA strictures is preempted. The NSA adopts the ferocity of the FAA in defending arbitration awards. Reach Air Med. Servs. LLC,160 F.4th at 1115 ("We review arbitration decisions very narrowly, and there is a strong legal presumption that arbitration awards will be confirmed[,]" and there is nothing in the "newly codified NSA, which has expressly incorporated some sections of the Federal Arbitration Act [ ], that has altered that limited scope of judicial review [or preference]."). The FAA preempts state law claims that would otherwise frustrate its purpose. See Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 533 (2012). Allowing Aetna to recover for the IDR awards above what it otherwise would have paid would have the same effect as discarding the administrative process established by Congress. Because the NSA adopted those specific provisions of the FAA, Aetna's remaining claims must also fall—they are both preempted by the NSA and FAA and otherwise inadequate grounds to challenge the IDR awards. Regarding those claims yet

to be submitted to the IDR, the Court is not empowered to take a preliminarily review. Indeed, Aetna possesses more than enough knowledge pertaining to their propriety and can, if appropriate, challenge those claims before the IDR.

Accordingly, after due consideration, it is

**ORDERED:**

Defendants' Motion to Dismiss the Amended Complaint (Doc. 84) is **GRANTED**. Because amendment would be futile, the Amended Complaint is **DISMISSED with prejudice**. The Clerk of the Court shall close this file and terminate any pending motions.

**DONE** and **ORDERED** in Jacksonville, Florida this __*16th*__ day of April, 2026.

_____
BRIAN J. DAVIS
United States District Judge

Copies furnished to:

Counsel of Record

- 10 -